UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNIVERSAL TRUCK & EQUIPMENT
COMPANY, INC.; NEW LONDON MINING,
MANUFACTURING & PROCESSING, LLC;
NICHOLAS E. CAMBIO;
VINCENT A. CAMBIO; and NICHOLAS E.
CAMBIO, as trustee of THE NICHOLAS E.
CAMBIO, RONEY A. MALAFRONTE AND
VINCENT A. CAMBIO TRUST,

        Plaintiffs,

v.                                                                                    Case No.:  10-466 S

CATERPILLAR, INC.,

        Defendant,

And

CATERPILLAR FINANCIAL SERVICES
CORPORATION; and SOUTHWORTH-MILTON,
INC.,

        Defendants and Plaintiffs-in-Counterclaim.

**MEMORANDUM OF LAW IN SUPPORT OF
CATERPILLAR FINANCIAL SERVICES CORPORATION'S
<u>MOTION FOR WRIT OF REPLEVIN AND PRELIMINARY INJUNCTION</u>**

Pursuant to Fed. R. Civ. P. 64 and R.I. General Laws 34-21-1 and Fed. R. Civ. P. 65, the Defendant, Caterpillar Financial Services Corporation ("Cat Financial"), moves that it be granted an Writ of Replevin and a motion for Preliminary Injunction in the form attached to its motion. As grounds, Cat Financial states as follows:

**I. <u>Introduction</u>**

Cat Financial loaned over $2,500,000 to Plaintiff, New London Mining, Manufacturing & Processing, LLC ("New London" and/or "Plaintiff") as evidenced by,

among other things, various Security Agreements, Notes and other Loan Documents as set forth in the Affidavit of Marion Covell ("Covell Aff."). Plaintiff pledged acertain commercial Equipment (the "Equipment") as collateral and Cat Financial duly perfected its interests in that Equipment by filing UCC Statements.

Cat Financial commenced this action because New London breached the Loan Documents. Specifically, New London failed to make payments when due thereunder. Despite demand and repeated requests, New London has failed to timely cure its default and to surrender the Equipment to Cat Financial as it promised to do under the Loan Documents. Faced with a substantial payment default as well as the potential unlawful sale of its mobile Equipment, Cat Financial seeks immediate, equitable relief from this Court.

Cat Financial seeks possession of the Equipment and entry of a preliminary injunction preventing New London and other persons and firms with knowledge of the order from using, selling, concealing, wasting, encumbering, converting or conveying the Equipment, and preventing New London and other persons and firms from interfering with the efforts and rights of Cat Financial to repossess the Equipment.

## II. Statement of Facts

1. On or about March 17, 2008, Cat Financial financed New London's purchase of 22 pieces of equipment (collectively, the "First Equipment"), for a total purchase price of $3,393,889.87 pursuant to a Security Agreement and Promissory Note dated March 17, 2008 (the "First Agreement"). See Exhibit A to Affidavit of Marion Covell ("Covell Aff.").

2. Also on or about March 17, 2008, plaintiffs UTE, Nicholas E. Cambio, Vincent A. Cambio, and the Trust (collectively, the "Guarantors") executed personal guaranties (collectively, the "First Guaranties") for New London's contractual obligations to Cat Financial under the First Agreement. See Exhibit to B Covell Aff.

4. On or about March 19, 2008, Cat Financial perfected its security interest by filing a UCC Financing Statement.

5. Of the 22 pieces of equipment that were the subject of the First Agreement, 18 pieces were subsequently refinanced (see Second Agreement below) and four pieces were returned to Cat Financial.

6. In addition, New London and the Guarantors are indebted to Cat Financial for the amounts due and owing for unpaid installment payments as provided by the First Agreement.

7. On or about July 30, 2009, Cat Financial refinanced the terms of New London's prior purchase of 18 pieces of equipment plus 6 additional pieces of equipment (the "Second Equipment," and collectively with the First Equipment, the "Equipment"), for a total purchase price of $2,490,272.25 pursuant to a Security Agreement and Promissory Note dated July 30, 2009, a true copy of which is attached hereto as Exhibit C to Covell Aff. (the "Second Agreement," and collectively with the First Agreement, the "Agreements").

8. Pursuant to the Second Agreement, New London granted Cat Financial a first priority, continuing security interest in the Equipment as collateral for an installment payment plan by which New London was to remit nine monthly payments of $17,500, and 51 monthly payments of $55,472.69 to Cat Financial for a total term of 60 months at

an interest rate of 6.90 % per annum. Cat Financial had previously perfected its security interests in each of the 18 units refinanced by the Second Agreement contemporaneously with the original financing transactions with New London. The Second Agreement explicitly stated that time was of the essence. Cat Financial had previously perfected its security interest in the six additional pieces of equipment by filing UCC Financing Statements, and was listed as the first lien holder on the title of another piece of equipment, true copies of which are attached as Exhibit D to Covell Aff.

9. On or about July 31, 2009, each of the Guarantors executed personal guaranties (the "Second Guaranties," and collectively with the First Guaranties, the "Guaranties") for New London's contractual obligations to Cat Financial under the Second Agreement, true copies of the Guaranties are attached as Exhibit E to Covell Aff.

10. New London stopped making payments on the Second Agreement, and is in breach and default thereunder.

11. On or about March 2, 2010, Cat Financial sent letters to New London and the Guarantors by certified mail, advising that the entire unpaid principal amount was then due and payable along with all accrued and accruing unpaid interest thereon, and demanding return of the Equipment. See Exhibit F to Covell Aff.

12. Other than the sale of the equipment referenced in paragraph 20 of the Covell Aff, New London has made no response to any of Cat Financial's demands for payment, notwithstanding its default, and as of 9/30/2010, was indebted to Cat Financial for approximately $2,022,284.90 , which represents amounts due and owing for unpaid installment payments as provided by the Second Agreement, and certain interest, which

continues to accrue daily, plus costs of collection, including reasonable attorney's fees and expenses.

    13. The Second Agreement provides, in relevant part:

> **12. Events of Default.** Each of the following constitutes an event of default ("Event of Default"): (a) Debtor fails to make any payment when due; …
>
> **13. Remedies.** If any Event of Default occurs, [Cat Financial] may exercise any one or more of the following remedies: (a) declare all amounts due or to become due under this Agreement immediately due and payable; (b) recover any additional damages and expenses sustained by [Cat Financial] by reason of the breach of any covenant, representation, or warranty contained in this Agreement; (c) enforce the security interest granted herein; (d) require the Debtor to assemble the Collateral and make them available to [Cat Financial] at a place designated by [Cat Financial] which is reasonably convenient to both parties; and (e) enter any premises where any Collateral may be located and take immediate possession thereof and remove (or disable in place) such Collateral (and/or any unattached parts) without notice, liability, or legal process. … Debtor agrees to pay all charges, costs, expense and reasonable attorney's fees … incurred by [Cat Financial] in enforcing this Agreement. … [Cat Financial] may, at its option, undertake commercially reasonable efforts to sell the Collateral, and the proceeds of any such sale shall be applied: First, to reimburse [Cat Financial] for all reasonable expenses of retaking, holding, preparing for sale, and selling the Collateral, including all taxes, charges, costs, expenses and reasonable attorney's fees incurred by [Cat Financial]; and second, to the extent not previously paid by Debtor, to pay [Cat Financial] all amounts then due or accrued under this Agreement, including any accelerated payments, late payment charges, and fees. … Debtor shall promptly pay any deficiency to [Cat Financial]. Debtor acknowledges that sales for cash or on credit to a wholesaler, retailer or user of the Collateral, with or without the Collateral being present at such sale, are all commercially reasonable.

Second Agreement, ¶¶ 12-13.

14. Accordingly, Cat Financial is entitled to repossession and resale of the Second Equipment in light of New London's default

**THE DEFAULT**

New London is in default under the terms of the Loan Documents. See Covell Affidavit, ¶ 14.

Specifically, New London failed to timely make the required payments due under the Loan Documents in April 2010. See Covell Affidavit, ¶ 14.

Despite such demand, however, New London has failed to pay the amounts due and owing under the Loan Documents. See Covell Affidavit, ¶¶ 15, 16.

The Equipment depreciates and deteriorates as a result of its continued use by New London. A current list of the Equipment held by New London that secures the loans from Cat Financial is attached as Exhibit H to the Covell Affidavit.

There exists a clear and pressing need for Cat Financial to gain possession of the Equipment, because, due to its mobility, the Equipment may likely be moved from place to place once New London of Cat Financial's intention to regain possession thereof, and abused and subjected to liens and waste that will threaten Cat Financial's ability to collect on the judgment that it seeks in the underlying action for money damages herein;

### III. Argument

#### A. CAT FINANCIAL IS ENTITLED TO A WRIT OF REPLEVIN

Under Rhode Island law, "If goods exceeding twenty dollars in value are unlawfully taken or detained from the owner or person entitled to their possession. . .the owner. . .may cause them to be replevied." Rhode Island General Laws, §§ 34-21-1 *et seq*.

Relevin is "available to persons claiming possession of goods or chattels either wrongfully taken or wrongfully detained. Nothing more than the right of present possession, founded upon a general or special ownership of goods or chattels, is necessary to enable a plaintiff to maintain the action." Vinebeg v. Bissonnette, 529 F. Supp. 2d 300, 306 (D.R.I. 2007), quoting Brunswick Corp. v. SposatoBrunswick Corp. v. Sposato, 120 R.I. 673, 676 (1978). Rule 64 "makes replevin available in federal court" under the law of the state where the district court is located. Vineberg, 529 F. Supp. 2d at 306.

Cat Financial is entitled to this relief. It has described the Equipment in detail so that it may be identified based on its model, serial and registration numbers. See Exhibit H to Covell Affidavit

Cat Financial has also set forth with specificity the facts underlying its claim to possession. The Security Agreements expressly state that New London's failure to make payments under the Notes is a default under the Loan Documents. See Exhibits A and C to Covell Affidavit. Upon default, Cat Financial has the express right to, among other things, and take immediate possession thereof. Id. Cat Financial has established that New London failed to make payments when due under the Notes and that, therefore, New London is in default under the Security Agreements and that, therefore, Cat Financial is entitled to immediate possession of the Equipment. See Exhibit A and C, ¶ 13 of Exhibit C to Covell Aff.

On account of New London's refusal to deliver the Equipment to Cat Financial -- as it agreed to do upon default when it pledged the Equipment as collateral – New London's continued use and possession is wrongful. See Exhibit A and C to Covell Aff.

Accordingly, Cat Financial has indisputably met and exceeded its burden as movant to show probable success on the merits, as the Complaint and accompanying Covell Affidavit and supporting documents amply demonstrate that Cat Financial has a clear and indisputable right to immediate possession of the Equipment and this court should issue a writ of replevin.

B. **CAT FINANCIAL IS ENTITLED TO THE ORDER OF REPLEVIN IN THE FORM OF INJUNCTIVE RELIEF**

Cat Financial also seeks an injunction in the form attached to its motion in aid of enforcement of the writ of replevin. To support the issuance of a preliminary injunction, Cat Financial must demonstrate: (1) a substantial likelihood of success on the merits; (2) significant risk of irreparable harm in the absence of injunctive relief; (3) the threatened harm to plaintiff outweighs the harm the injunction may cause to New London; and (4) the preliminary injunction will promote the public interests. Kelley v. A.T. Wall, No. 10-233, 2010 U.S. Dist. LEXIS 134373, *5 (D.R.I. Nov. 30, 2010), citing McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001). The likelihood of success on the merits is of primary importance. See, Wine and Spirit Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005). Cat Financial prevails on each of these elements.

First, Cat Financial has a very strong likelihood of succeeding on the merits of its injunctive relief and replevin claims. Cat Financial possesses a security interest in the Equipment. Moreover, the Security Agreements entitle Cat Financial to take possession of and remove the Equipment upon default. It would be contrary to the parties' intention when they contracted with each other to deny Cat Financial its immediate right to gain possession of the Equipment since Cat Financial possesses a security interest in it and since the Security Agreements expressly provide for such a remedy in the event of default.

Second, Cat Financial will suffer irreparable injury if New London continues to use the Equipment, and Cat Financial does not have an adequate remedy at law. The Equipment is deteriorating and depreciating in value through use and possible abuse by New London. Other remedies are inadequate, because if New London sells or transfers the Equipment to a third party, Cat Financial's security interest could be rendered meaningless, and any efforts to recover the Equipment from the third party would expose Cat Financial and New London to additional liability. Injunctive relief is appropriate where the relevant funds or assets in which a party has an equitable interest are in danger of depletion and dissipation. Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52 (1st Cir. 1986).

Third, the threatened harm to Cat Financial outweighs the harm the injunction will cause to New London. New London currently owes Cat Financial over two million dollars, and Cat Financial stands to lose a substantial portion of its account payable because the Equipment is depreciating. Absent return of the Equipment, Cat Financial cannot mitigate its losses. The Parties' agreement, as expressed in the Loan Documents, contemplates that New London -- and not Cat Financial -- must suffer the consequences of its inability to pay. Cat Financial's request that New London be enjoined from using the Equipment is a bargained for right that should not be denied.

Additionally, the granting of the injunction sought will not harm the public interest. Under the Loan Documents, Cat Financial has the right to take possession of the Equipment at any time without the orderliness that will result from enforcing that right through legal process. The conduct of business transactions depends on the faithful enforcement of contracts.

Accordingly, a replevin order in the form of an injunction is proper to assure the orderly transfer of possession of the Equipment, to preserve its value, and to protect Cat Financial from sustaining damages that cannot be estimated or calculated.

### III. Conclusion

For these reasons and upon the authorities set forth above and in the accompanying pleadings, Cat Financial respectfully requests that this Court issue an Order of Replevin in the form attached hereto.

Respectfully submitted,

CATERPILLAR FINANCIAL
SERVICES CORPORATION

By its attorneys,

/s/ A. Neil Hartzell
A. Neil Hartzell (# 4909)
LeClairRyan, A Professional Corporation
One International Place
Boston, MA 02110
Tel: 617-502-8200
Fax: 617-502-8201

Dated: February 28, 2011

## CERTIFICATE OF SERVICE

I, A. Neil Hartzell, hereby certify that on this 28th day of February, 2011, a copy of the foregoing was served on the attorneys for the other parties who are registered ECF users by electronic means pursuant to Local Rule 5.4(c) and by first class mail, postage prepaid to the attorneys who are not registered ECF users.

/s/ A. Neil Hartzell
A. Neil Hartzell