UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNIVERSAL TRUCK & EQUIPMENT COMPANY, INC.,  :
NEW LONDON MINING, MANUFACTURING &          :
PROCESSING, LLC, NICHOLAS E. CAMBIO,        :
VINCENT A. CAMBIO, and NICHOLAS E. CAMBIO,  :
as Trustee of THE NICHOLAS E. CAMBIO,       :
RODNEY A. MALAFRONTE AND VINCENT A.         :
CAMBIO TRUST,                               :
                        Plaintiffs,         :
                                            :
            v.                              :    CA 10-466 S
                                            :
CATERPILLAR, INC., et al.,                  :
                        Defendants,         :
                                            :
            and                             :
                                            :
CATERPILLAR FINANCIAL SERVICES CORPORATION  :
and SOUTHWORTH-MILTON, INC.,                :
                        Defendants and      :
                        Plaintiffs-in-      :
                        Counterclaim.       :


### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court is Defendant Caterpillar Financial Services Corporation's Motion for a Writ of Replevin and Preliminary Injunction (Docket ("Dkt.") #9) ("Motion for Replevin and Preliminary Injunction" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). See Guan Zhao Lin v. Holder, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *1 n.1 (S.D.N.Y. July 2, 2010)("Under 28 U.S.C. § 636(b)(1)(B), a district judge may refer a motion for injunctive relief ... for a report and

recommendation. A magistrate judge does not have authority to grant or deny injunctive relief, absent the parties' consent under section 636(c)."); Anglers of the Au Sable v. U.S. Forest Service, 402 F.Supp.2d 826, 828 (E.D. Mich. 2005)(withdrawing order of reference "because the magistrate judge is without authority (absent consent of the parties) to grant injunctive relief"). For the reasons stated herein, I recommend that the Motion be granted.

## I. Synopsis

Defendant Caterpillar Financial Services Corporation ("CAT Financial") loaned more than $2,500,000 to Plaintiff New London Mining, Manufacturing & Processing, LLC ("New London"). As collateral, New London pledged certain commercial equipment, and CAT Financial perfected its interest in that equipment by filing Uniform Commercial Code ("U.C.C.") statements. New London failed to make payments when due under the loan documents and failed to cure its default. In an apparent preemptive strike, however, New London and the other Plaintiffs sued CAT Financial and the other Defendants in the Kent County Superior Court for breach of contract and fraud in connection with the loan agreements. See Complaint ¶¶ 66-91, 94-99. Plaintiffs also sought declaratory and injunctive relief. Id. ¶¶ 92-93, 100-105. With respect to the latter relief, Plaintiffs sought to enjoin Defendants from repossessing the equipment, proceeding against those Plaintiffs who had personally guaranteed repayment of the loans, and trespassing on Plaintiffs'

property.    Id. ¶¶ 100-105.

CAT Financial responded to the lawsuit by counterclaiming for breach of contract (against New London and the guarantors of the loans), for replevin of the equipment (against New London), and for unjust enrichment (against New London).    See Answer, Affirmative Defenses, and Counterclaim of Defendants Caterpillar, Inc., and Caterpillar Financial Services Corporation ("Answer and Counterclaim") ¶¶ 25-48.    By the instant Motion, CAT Financial seeks possession of the equipment in which it has a security interest and a preliminary injunction preventing New London and other persons and firms with knowledge of the injunction from selling the equipment and interfering with CAT Financial's efforts to repossess the equipment.

## II.  Facts

### A.  The First Agreement

On or about March 17, 2008, New London and CAT Financial entered into a Security Agreement and Promissory Note dated March 17, 2008 (the "First Agreement"), for New London's purchase and/or refinance of 22 pieces of equipment (collectively the "First Equipment"), for a total purchase price of $3,393,889.87.[1]

---

[1] The Security Agreement and Promissory Note dated March 17, 2008 (the "First Agreement"), lists 22 pieces of equipment of which 6 pieces are identified as "NEW" and 16 pieces are identified as "USED." Affidavit of Marion Covell (Dkt. #11) ("Covell Aff."), Exhibit ("Ex.") A (First Agreement), Attachment ("Att.") A (Equipment Description Schedule).    Plaintiffs appear to contend that the First Agreement involved the purchase of 18 new vehicles and that CAT Financial took a

Affidavit of Marion Covell ("Covell Aff.") (Dkt. #11) ¶ 6. Pursuant to the First Agreement, New London granted CAT Financial a first priority, continuing security interest in the First Equipment as collateral for an installment payment plan. Id. The First Agreement required New London to remit monthly payments of $64,405.12 to CAT Financial for sixty months and explicitly stated that time was of the essence. Id. ¶ 7.

Plaintiffs Universal Truck & Equipment Company, Inc. ("Universal"), Nicholas E. Cambio ("Nicholas"), Vincent A. Cambio ("Vincent"), and Nicholas E. Cambio as Trustee of The Nicholas E. Cambio, Rodney A. Malafronte and Vincent A. Cambio Trust (the "Trust") (collectively the "Guarantors") executed personal guarantees (collectively the "First Guaranties") for New London's contractual obligations to CAT Financial under the First Agreement. Id. ¶ 8. On or about March 19, 2008, CAT Financial perfected its security interest in the equipment that was the subject of the First Agreement by filing its U.C.C. Financing Statements.[2] Id. ¶ 9. Of the 22 pieces of equipment that were the subject of the

---

security interest in not only the 18 new vehicles being purchased but additionally "ten vehicles which Plaintiffs already owned." Plaintiffs' Memorandum of Law Supporting Objection to Caterpillar Financial Services Corporation's Motion for a Writ of Replevin and Preliminary Injunction (Dkt. #15) ("Plaintiffs' Mem.") at 4. Plaintiffs do not support their contention with any evidence, and it is at odds with the description of the equipment listed in the First Agreement, see First Agreement, Att. A.

[2] CAT Financial notes parenthetically that as to certain of these pieces of equipment it had previously perfected its security interest. Covell Aff. ¶ 9.

First Agreement, 18 pieces were subsequently refinanced by a second agreement and 4 pieces were returned to CAT Financial. <u>Id.</u> ¶ 10.

### B. The Second Agreement

On or about July 31, 2009, CAT Financial refinanced the terms of New London's prior purchase of 18 pieces of equipment plus 6 additional pieces of equipment (the "Second Equipment" and, collectively with the First Equipment, the "Equipment") for a total purchase price of $2,490,272.25. <u>Id.</u> ¶ 11. As part of the refinancing, the parties executed a Security Agreement and Promissory Note dated July 31, 2009 (the "Second Agreement" and, collectively with the First Agreement, the "Agreements").[3] <u>Id.</u> ¶ 12. Pursuant to the Second Agreement, New London granted CAT Financial a first priority, continuing security interest in the Equipment as collateral for an installment payment plan by which New London was to remit nine monthly payments of $17,500.00 and fifty-one monthly payments of $55,472.69 to CAT Financial for a total term of sixty months.[4] <u>Id.</u> CAT Financial had previously

_____

[3] Plaintiffs agree that the Second Agreement was secured by 24 pieces of Caterpillar equipment "which was [sic] to remain in Plaintiffs' possession." Plaintiffs' Mem. at 5.

[4] Plaintiffs state that there was an additional agreement pursuant to which "Universal [sic] agreed to return four pieces of Caterpillar equipment valued at about $1.2 million to Southworth to be resold in a private sale through Caterpillar's nation-wide and world-wide networks." Plaintiffs' Mem. at 5. According to Plaintiffs, CAT Financial subsequently sold the four pieces in two sales for substantially less than their fair market value and then notified Plaintiffs that they were obligated to pay deficiencies resulting from the sales. <u>See id.</u> at 5-6. Plaintiffs indicate that they had expected that the sales of the four pieces of collateral would reduce their monthly obligations on the

perfected its security interest in each of the 18 units refinanced by the Second Agreement contemporaneously with the original financing transactions with New London. Id. ¶ 12. CAT Financial had previously perfected its security interest in the 6 additional pieces of equipment by filing U.C.C. Financing Statements. Id. The Guarantors executed personal guaranties (the "Second Guarantees" and, collectively with the First Guaranties, the "Guaranties") for New London's contractual obligations to CAT Financial under the Second Agreement. Id. ¶ 13. Like the First Agreement, the Second Agreement stated that time was of the essence. Id. ¶ 12. The Second Agreement also stated that the failure of New London to make any payment when due was an "Event of Default," id. ¶ 17, and that if an event of default occurred, CAT Financial could, among other available remedies, enforce the security interest, require that New London assemble the collateral and make it available to CAT Financial at a place designated by CAT Financial, and enter any premises where the collateral was located and take possession thereof, id.

## C. Subsequent Events

New London stopped making payments on the Second Agreement.

---

refinancing note substantially and were surprised to receive deficiency notices. Id. at 6. Plaintiffs claim that they could not obtain an accounting of how the proceeds of the sales were applied to their accounts. Id. at 6-7. As a result, according to Plaintiffs, they filed the instant lawsuit in June 2010 against Caterpillar, Inc. ("CAT"), CAT Financial, and Southworth-Milton, Inc. ("Southworth"), to dispute the commercial reasonableness of the sales of collateral and the deficiencies which arose from these sales. Id. at 7.

Id. ¶ 14.  On or about March 2, 2010, CAT Financial sent letters to New London and the Guarantors by certified mail, advising that the entire unpaid principal amount was then due and payable along with all accrued and accruing unpaid interest thereon and demanding the return of the Equipment.  Id. ¶ 15.  New London and the Guarantors did not respond to CAT Financial's demands for payment other than by New London selling, after suit was commenced in this matter and with CAT Financial's consent, 5 units of equipment and applying the proceeds of the sales towards New London's indebtedness.  Id. ¶¶ 15-16, 20.

As of September 30, 2010, New London was indebted to CAT Financial for approximately $2,022,284.90, which represents amounts due and owing for unpaid installment payments as provided by the Second Agreement and certain interest which continues to accrue daily, plus costs of collection, including attorney's fees and expenses.  Id. ¶ 16.

## III.  Travel

Plaintiffs filed their Complaint in the state court on or about June 18, 2010.  See Notice of Removal (Dkt. #1).  The action was removed to this Court on November 16, 2010, by Defendants Southworth-Milton, Inc. ("Southworth"), Caterpillar, Inc. ("CAT"), and CAT Financial.  See Dkt.  Plaintiffs Universal, New London, Nicholas, Vincent, and the Trust (collectively "Plaintiffs") moved to remand the matter, see id., but the motion was denied at a

hearing held on February 3, 2011, <u>see</u> <u>id.</u>  The instant Motion was filed on February 28, 2011.  After receiving an extension of time, Plaintiffs filed their opposition to the Motion on April 1, 2011. <u>See</u> <u>id.</u>  Defendant CAT Financial filed a reply memorandum six days later.  <u>See</u> <u>id.</u>  The Motion was referred to this Magistrate Judge on May 23, 2011, and a hearing was held on June 13, 2011. Thereafter, the Court took the matter under advisement.

**IV.  Law**

**A.  Writ of Replevin**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 64[5] makes

---

[5] Fed. R. Civ. P. 64 provides:

Rule 64. Seizing a Person or Property

(a) Remedies Under State Law–In General.  At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.  But a federal statute governs to the extent it applies.

(b) Specific Kinds of Remedies. The remedies available under this rule include the following–however designated and regardless of whether state procedure requires an independent action:

• arrest;

• attachment;

• garnishment;

• replevin;

• sequestration; and

• other corresponding or equivalent remedies.

Fed. R. Civ. P. 64.

replevin available in federal court. <u>Vineberg v. Bissonnette</u>, 529
F.Supp.2d 300, 306 (D.R.I. 2007). Pursuant to Rule 64 replevin is
available "under the law of the state where the court is located
...." Fed. R. Civ. P. 64(a). Under Rhode Island law, "[w]henever
any goods or chattels of more than five thousand dollars ($5,000)
value shall be unlawfully taken or unlawfully detained from the
owner or from the person entitled to the possession thereof ... the
owner or other person may cause the same to be replevied by writ of
replevin ...." R.I. Gen. Laws § 34-21-1.[6]  The Rhode Island
Superior Court Rules of Civil Procedure provide that "a motion for
replevin shall be granted upon a showing that there is (1) a
probability of judgment being entered in favor of the plaintiff and
(2) a 'substantial need for transfer of possession of the' property
pending adjudication of the claim." <u>Vineberg</u>, 529 F.Supp.2d at 306
(quoting R.I. Super. R. Civ. P. 64(a)).[7]

---

[6] R.I. Gen. Laws § 34-21-1 in its entirety states:

Whenever any goods or chattels of more than five thousand
dollars ($5,000) value shall be unlawfully taken or unlawfully
detained from the owner or from the person entitled to the
possession thereof, and whenever any goods or chattels of that
value, which are attached on mesne process or execution or
warrant of distress, are claimed by any person other than the
defendant in the suit or process in which they are attached,
the owner or other person may cause the same to be replevied
by writ of replevin issuing from the superior court.

R.I. Gen. Laws § 34-21-1.

[7] CAT Financial argues that R.I. Super. R. Civ. P. 64(a) does not
apply to a case once it is removed to federal court. <u>See</u> Reply of
Caterpillar Financial Services Corporation to Plaintiffs' Objection to
Writ of Replevin and Preliminary Injunction ("Reply") at 3 (citing <u>Wright</u>

Replevin is an "action for the repossession of personal property wrongfully taken or detained by the defendant ...." Id. (quoting Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796, 804 n.14 (R.I. 2005))(alteration in original). As noted above, in Rhode Island replevin is a statutory cause of action, id.; Brunswick Corp. v. Sposato, 389 A.2d 1251, 1253 (R.I. 1978), and is "available to persons claiming possession of goods or chattels either wrongfully taken or wrongfully detained," Brunswick Corp., 389 A.2d at 1253. Nothing more than the right of present possession, founded upon a general or special ownership of the goods or chattels, is necessary to enable a plaintiff to maintain

---

v. Redding, 408 F.Supp. 1180, 1183 (E.D. Pa. 1975)). While it is true that "a federal court sitting in diversity jurisdiction applies the state's substantive law and the federal procedural rules," Godin v. Schencks, 629 F.3d 79, 85 (1st Cir. 2010)(internal footnote omitted), the line between substance and procedure has been called "an enduring conundrum," id. at 86; see also id. ("What are matters of substance and what are matters of procedure is difficult to distinguish, and the two are not mutually exclusive categories."); Correia v. Fitzgerald, 354 F.3d 47, 53 (1st Cir. 2003)("Classifying a particular matter as substantive or procedural can sometimes be a challenging endeavor."). Here the Court concludes that the standard contained in Super. R. Civ. P. 64(a) is more substantive than procedural as it is part of the state's "framework of substantive rights or remedies." Godin, 629 F.3d at 87 ("The critical question is not 'whether the state law at issue takes the form of what is traditionally described as substantive or procedural,' but rather 'whether the state law actually is part of a State's framework of substantive rights or remedies.'")(quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., ___ U.S. ___, 130 S.Ct. 1431, 1449 (2010)(Stevens, J., concurring)); cf. Hoyos v. Telecorp Comms., Inc., 488 F.3d 1, 5 (1st Cir. 2007)(stating that "the real issue ... is whether [Puerto Rico] Law 2 concerns procedure or substance" and finding that "[i]t is clear that this is a local procedural rule, which does not and cannot govern proceedings in federal court."). This Court also notes that Chief Judge Lisi in analyzing the merits of the replevin action in Vineberg v. Bissonnette, 529 F.Supp.2d 300 (D.R.I. 2007), which like the instant action was based on diversity, quoted R.I. Super. R. Civ. P. 64(a), see id. at 306.

the action.  Id.  "An action in replevin merely adjudicates who has the *superior* right to possession of goods."  Vineberg, 529 F.Supp.2d at 306 (quoting Assocs. Capital Servs. Corp. v. Riccardi, 408 A.2d 930, 935 (R.I. 1979)).

**B. Preliminary Injunction**

A party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable injury in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) the injunction is in the public interest.  Voice of the Arab World Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)(citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365 (2008)); see also Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).  The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor.  Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18; Baldwin v. Bader, No. 07-46-P-H, 2008 WL 564642, at *1 (D. Me. Feb. 28, 2008).  "This burden is a heavy one: 'Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.'"  Friends of Magurrewock, Inc. v. U.S. Army Corps of Engineers, 498 F.Supp.2d 365, 369 (D. Me. 2007)(quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir.

2003)); see also Voice of the Arab World, Inc., 645 F.3d at 32 ("A preliminary injunction is an 'extraordinary and drastic remedy[]' that is never awarded as a matter of right.")(internal citations omitted); Baldwin v. Bader, 2008 WL 564642, at *1 ("The court must 'bear constantly in mind that an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'")(quoting Saco Def. Sys. Div. Maremont Corp. v. Weinberger, 606 F.Supp. 446, 450 (D. Me. 1985)) (alteration in original).

The *sine qua non* of the four part test is likelihood of success on the merits: if the moving party cannot demonstrate that it is likely to succeed in its quest, the remaining factors become matters of idle curiosity. Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18 (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)); see also McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001)(stating that movant must show "a substantial likelihood of success on the merits"). The greater the likelihood of success on the merits, the less that is required in the way of irreparable harm. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).

Nevertheless, the Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Voice of the Arab World, Inc., 645 F.3d at 32 (quoting Weinberger v. Romero-

Barceló, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982)). Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Id. (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995) at 139). Thus, an injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable. Id. (citing Romero-Barceló, 456 U.S. at 312).

## V. Application of Law to Facts

### A. Satisfaction of Replevin Standard

The Agreements expressly state that the failure of New London to make any payment when due is a default. First Agreement ¶ 10; Second Agreement ¶ 12. Despite demands for payment, New London has not made any payments since April 2010. See Covell Aff. ¶ 14. Accordingly, I find that New London is in default.

Upon default, CAT Financial has the right to, among other things, take immediate possession of the Equipment. This is implicitly stated in ¶ 11 of the First Agreement[8] and explicitly

---

[8] Paragraph 11 of the First Agreement states in part that upon default CAT Financial:

may, at its option, do any one or more of the following: ...
(c) enforce the security interest granted hereunder ... (f)

13

stated in ¶ 13 of the Second Agreement.[9]  CAT Financial has
demanded that New London return the Equipment, see Covell Aff. ¶
15, but New London has failed to do so, see Electronic Recording of
6/13/11 Hearing ("E.R.").[10]  Based on the fact that New London has
refused to return the Equipment to CAT Financial as it agreed to do
when it pledged the Equipment as collateral, I find that New
London's continued use and possession of the Equipment is wrongful.
I further find that CAT Financial has met its burden for issuance
of a writ of replevin by showing (1) a probability of judgment
being entered in its favor and (2) a substantial need for transfer
of possession of the property pending adjudication of the claim.
See Vineberg, 529 F.Supp.2d at 306.

Plaintiffs' arguments to the contrary are unpersuasive.
Plaintiffs contend that CAT Financial's sale of the 4 vehicles

require Debtor to assemble the Collateral and make it
available to [CAT Financial] at a place designated by [CAT
Financial] which is reasonably convenient to [CAT Financial]
and Debtor. [CAT Financial] shall have all rights given to a
secured party by law and all of [CAT Financial]'s rights and
remedies shall be cumulative and nonexclusive, to the extent
permitted by applicable law. [CAT Financial] may, at its
option, undertake commercially reasonable efforts to sell or
dispose of all or any part of the Collateral ....

First Agreement ¶ 11.

[9] In addition to the remedies stated in n.8, the Second Agreement
states that New London may "enter any premises where any Collateral may
be located and take immediate possession thereof and remove (or disable
in place) such Collateral (and/or any unattached parts) without notice,
liability, or legal process."  Second Agreement ¶ 13.

[10] At the June 13, 2011, hearing, Plaintiffs' counsel acknowledged
that New London continues to possess and use the Equipment.  Electronic
Recording of 6/13/11 Hearing ("E.R.").

which New London returned to it[11] violated provisions of the U.C.C. contained within Chapter 6A-9 of the R.I. Gen. Laws. <u>See</u> Plaintiffs' Mem. at 10-12. However, despite Plaintiffs' attempt to draw a connection, <u>see</u> <u>id.</u> at 12, the instant Motion has nothing to do with the disposal or sale of the 4 vehicles. CAT Financial is seeking repossession of the Equipment and is not, by the Motion, seeking any deficiency.

Even if there were a connection between the 4 vehicles and the Equipment, this Court fails to see any how any claim arising out of the allegedly improper sale of those vehicles would entitle New London to continue to use the Equipment without payment for it. Yet, this is seemingly the position Plaintiffs espouse. <u>See</u> Plaintiffs' Mem. at 12 (asserting that "it is impossible to conclude that [CAT Financial] has met its burden of proving a probability of judgment being rendered in their favor"). Given that New London has now had the use of the Equipment for well over a year without paying for it, the Court has no difficulty rejecting this argument by Plaintiffs. CAT Financial is clearly entitled to judgment in its favor on the issue of who has the "superior right" to possess the Equipment. <u>Vineberg</u>, 529 F.Supp.2d at 306.

Plaintiffs also argue that CAT Financial has not shown a substantial need to gain possession of the Equipment pending adjudication of its claim. <u>See</u> Plaintiffs' Mem. at 8-10. They

---

[11] <u>See</u> n.4.

15

contend that CAT Financial's concern about the deterioration of the Equipment is a recent fabrication and that it is unsupported by any factual evidence.[12]  See id. at 8-9.  However, Plaintiffs' counsel acknowledged at the hearing that New London is continuing to use the Equipment every day.  E.R.  It is within the realm of common sense and common knowledge that equipment, especially that used in construction as this Equipment is, suffers wear and tear from normal use over time.  It is also within the realm of common sense and common knowledge that as such equipment ages it depreciates in value.  The Court is satisfied that CAT Financial has demonstrated a substantial need for the transfer of the Equipment to its possession as the value of the Equipment is declining.

Accordingly, I recommend that the writ of replevin sought by the Motion be issued.

**B.  Satisfaction of Preliminary Injunction Standard**

**1.  Likelihood of Success**

I find that CAT Financial has a strong likelihood of success on its replevin claim (Count III of Counterclaim).  CAT Financial possesses a security interest in the Equipment.  The Agreements

---

[12] Plaintiffs, without any supporting affidavit or other evidence, assert that CAT Financial "for *several years* has made no objection to the equipment remaining in Plaintiffs' possession throughout the time period when Plaintiffs were first defaulted on the notes in February of 2009." Plaintiffs' Mem. at 8 (italics added).  This assertion on its face is an exaggeration as two years is not "several years."  Moreover, the record reflects that CAT Financial demanded return of the Equipment in the March 2, 2010, Default Notices.  See Covell Aff., Ex. F at 3, 7. Notwithstanding these demands, New London did not return the Equipment, but continues to use it.  E.R.

entitle CAT Financial to take possession of and remove the Equipment upon default. As CAT Financial validly points out, it would be contrary to the parties' intention when they contracted with each other to deny CAT Financial its immediate right to gain possession of the Equipment since CAT Financial possesses a security interest in it and also since the Agreements provide for such a remedy in the event of default. <u>See</u> Plaintiffs' Mem. at 8.

### 2. Irreparable Harm

As noted above, the value of the Equipment is diminishing each day that it continues to be used by New London. As a result the value of CAT Financial's security interest, for which it contracted in order to reduce the risk involved in making the loans to New London, is also diminishing daily. While it is true that the Agreements contemplated that New London would use the Equipment and also true that such use would cause the value of that Equipment to decline over time, the decline in value would be offset by the monthly payments CAT Financial would be receiving for the Equipment. Here, however, the value of the Equipment (and hence the value of CAT Financial's security interest) is deteriorating without any offsetting effect by the receipt of monthly payments from New London for the Equipment. Accordingly, I find that CAT Financial is suffering irreparable harm with respect to its security interest.

17

### 3.  Balance of the Equities

The Court is also satisfied that the harm to CAT Financial from New London's continued use of the Equipment outweighs any harm New London may suffer from the grant of the requested injunction. Plaintiffs complain that "[i]n a time of economic distress, [CAT Financial] has aggressively re-worked Plaintiffs' several loans into a single large note secured by all of Plaintiff's [sic] equipment." Plaintiffs' Mem. at 9.  Plaintiffs assert that because all of their operating equipment is pledged to secure one omnibus loan, "a grant of replevin would destroy Plaintiffs' ability to discharge its repair, maintenance[,] and construction obligations in regard to the real estate developments it manages." Id. at 10. Plaintiffs predict that "[t]he chaotic effects would be felt by hundreds of people and scores of business operations including hotels, restaurants, big box retailers, condominium complexes[,] and retail shops who rely upon Plaintiffs providing these services." Id.

Plaintiffs' claims and their parade of horribles are unsupported by any affidavit or other evidence.  More importantly, however, CAT Financial is not seeking possession of all equipment in which it may have obtained a security interest, but only the 18 pieces which were part of the Second Agreement. See Motion, Ex. 1 (Proposed Preliminary Injunction), Ex. A (Equipment Financed by CAT

Financial and Currently Held by New London);[13] see also E.R. Plaintiffs have submitted no evidence that the repossession of these items will cause significant harm to them or anyone else. Accordingly, I find that the balance of the equities weighs in favor of issuance of the proposed preliminary injunction.

### 4. Public Interest

As noted above, Plaintiffs claim that granting the preliminary injunction will harm the public interest by negatively impacting "hundreds of people and scores of business operations ...," Plaintiffs' Mem. at 10, but Plaintiffs have submitted no evidence to support this claim. It also appears to be premised on CAT Financial taking "all Plaintiffs' collateral which includes all its vehicles of every make and description." Id. at 9. However, as already explained, CAT Financial is seeking to repossess only the 18 pieces of equipment which were refinanced by the Second Agreement – not every piece of equipment in which CAT Financial has a security interest. Plaintiffs' argument is, therefore, rejected.

The public has an interest in requiring parties to honor their

---

[13] The Court notes that Exhibit A (Equipment Financed by CAT Financial and Currently Held by New London) to the Proposed Preliminary Injunction lists 19 items. As counsel for CAT Financial confirmed at the hearing that it is only seeking to obtain possession of the 18 pieces which it sold to New London, it appears that one item should be deleted from the list. Accordingly, the Court will recommend that the Motion be granted but that CAT Financial be required to submit a corrected Ex. A to the Proposed Preliminary Injunction and that the corrected Ex. A list only 18 items.

contractual obligations.  See <u>Certified Restoration Dry Cleaning</u> <u>Network, L.L.C. v. Tenke Corp.</u>, 511 F.3d 535, 551 (6th Cir. 2007) ("[I]ssuing the preliminary injunction would hold Defendants to the terms of the bargain they entered into through the franchise agreement.  Enforcement of contractual duties is in the public interest."); <u>Grosso Enters., Inc. v. Domino's Pizza LLC</u>, Civil Action No. 11-1484, 2011 WL 816620, at *6 (E.D. Pa. Mar. 9, 2011)("the public interest favors enforcing valid contracts and remedying wrongful breaches"); <u>Johnson v. Cohan</u>, 96-07352, 1999 Mass. Super. LEXIS 19, at *18 (Mass. Super. Feb. 3, 1999)(noting "the public interest in enforcement of contracts").  In short, the conduct of business depends on the faithful enforcement of contracts.  Accordingly, I find that the public interest favors the issuance of the preliminary injunction.

### 5. Conclusion Re Issuance of Preliminary Injunction

In sum, I find that CAT Financial has met its burden of demonstrating that: (1) it is likely to succeed on the merits of its replevin claim, (2) it is likely to suffer irreparable injury in the absence of preliminary relief, (3) the balance of the equities tips in CAT Financial's favor, and (4) the injunction is in the public interest.  Accordingly, I recommend that CAT Financial's request for issuance of the preliminary injunction be granted.

## Conclusion

For the reasons stated above, I recommend: (1) that CAT Financial's Motion for Replevin and Preliminary Injunction be granted, (2) that a writ of replevin be issued, and (3) that a preliminary injunction be entered after CAT Financial submits a corrected Ex. A to the proposed preliminary injunction.[14]

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); District of Rhode Island Local Rule ("DRI LR") Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
October 5, 2011

---

[14] See n.13.