UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNIVERSAL TRUCK & EQUIPMENT COMPANY, INC.,    :
NEW LONDON MINING, MANUFACTURING &            :
PROCESSING, LLC, NICHOLAS E. CAMBIO,          :
VINCENT A. CAMBIO, and NICHOLAS E. CAMBIO,    :
as Trustee of THE NICHOLAS E. CAMBIO,         :
RONEY A. MALAFRONTE AND VINCENT A.            :
CAMBIO TRUST,                                 :
                        Plaintiffs,           :
                                              :
            v.                                :    CA 10-466 S
                                              :
CATERPILLAR, INC., et al.,                    :
                        Defendants,           :
                                              :
            and                               :
                                              :
CATERPILLAR FINANCIAL SERVICES CORPORATION    :
and SOUTHWORTH-MILTON, INC.,                  :
                        Defendants and        :
                        Plaintiffs-in-        :
                        Counterclaim.         :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge


Before the Court is Defendant Caterpillar Financial Services

Corporation's Second Motion for Preliminary Injunction (Docket

("Dkt.") #38) ("Second Motion for Preliminary Injunction" or

"Motion").[1]  The Motion has been referred to me for preliminary

---

[1] Defendant Caterpillar Financial Services Corporation ("CAT Financial") filed a previous motion for a preliminary injunction which was granted by the Court on December 15, 2011.  See Preliminary Injunction (Docket ("Dkt.") #55); see also Report and Recommendation (Dkt. #36) re Defendant Caterpillar Financial Services Corporation's Motion for a Writ of Replevin and Preliminary Injunction (Dkt. #9) ("First Motion for Preliminary Injunction").  The Preliminary Injunction required Plaintiff New London Mining, Manufacturing & Processing, LLC

review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). See Guan Zhao Lin v. Holder, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *1 n.1 (S.D.N.Y. July 2, 2010) ("Under 28 U.S.C. § 636(b)(1)(B), a district judge may refer a motion for injunctive relief ... for a report and recommendation. A magistrate judge does not have authority to grant or deny injunctive relief, absent the parties' consent under section 636(c)."); Anglers of the Au Sable v. U.S. Forest Service, 402 F.Supp.2d 826, 828 (E.D. Mich. 2005)(withdrawing order of reference "because the magistrate judge is without authority (absent consent of the parties) to grant injunctive relief"). For the reasons stated herein, I recommend that the Motion be denied.

## I. Synopsis

Defendant Caterpillar Financial Services Corporation ("CAT Financial") loaned more than $2,500,000 to Plaintiff New London Mining, Manufacturing & Processing, LLC ("New London"). As collateral, New London pledged certain commercial equipment, and CAT Financial perfected its interest in that equipment by filing Uniform Commercial Code ("U.C.C.") statements. New London failed to make payments when due under the loan documents and failed to cure its default. In an apparent preemptive strike, however, New

---

("New London"), to, among other things, surrender to CAT Financial eighteen pieces of equipment in which CAT Financial held a security interest. See Preliminary Injunction at 3. At the January 13, 2012, hearing on the instant Motion, Plaintiffs' counsel represented that this equipment had been surrendered to CAT Financial.

London and the other Plaintiffs sued Caterpillar, Inc. ("CAT"), CAT Financial, Southworth-Milton, Inc.[2] ("Southworth"), and other Defendants in the Kent County Superior Court for breach of contract and fraud in connection with the loan agreements. See Complaint ¶¶ 66-91, 94-99. Plaintiffs also sought declaratory and injunctive relief. Id. ¶¶ 92-93, 100-105. With respect to the latter relief, Plaintiffs sought to enjoin Defendants from repossessing the equipment, proceeding against those Plaintiffs who had personally guaranteed repayment of the loans, and trespassing on Plaintiffs' property. Id. ¶¶ 100-105.

CAT Financial responded to the lawsuit by counterclaiming for breach of contract against New London (Count I) and the guarantors of the loans (Count II), replevin against New London (Count III), and unjust enrichment against New London (Count IV).[3] See Answer, Affirmative Defenses, and Counterclaim of Defendants Caterpillar,

---

[2] It appears that Southworth-Milton, Inc. ("Southworth"), was the dealer through whom the equipment was purchased. See Complaint ¶¶ 8, 2-31.

[3] Unlike Counts I and II, Counts III and IV do not identify in their headings the Defendant against which the cause of action is pled. See Answer, Affirmative Defenses, and Counterclaim of Defendants Caterpillar, Inc., and Caterpillar Financial Services Corporation ("Answer and Counterclaim") ¶¶ 25-48. However, it can be reasonably inferred that Count III (replevin) is directed solely against New London because the count alleges that New London "is in possession of the Equipment, has wrongfully detained it, continues to detain it from Cat Financial, and refuses to surrender it to Cat Financial." Id. ¶ 43. The same inference can be made with respect to Count IV (unjust enrichment) which alleges that "a benefit has been conferred on [New London]," id. ¶ 47, and that "it will be an unjust enrichment for [New London] to retain the benefit conferred upon it without payment therefor," id. ¶ 48.

Inc., and Caterpillar Financial Services Corporation ("Answer and Counterclaim") ¶¶ 25-48. For these claims, CAT Financial seeks damages, plus interest, costs, and attorney's fees as well as a writ of replevin for the equipment in New London's possession. Id., prayer for relief; id. ¶ 43.

On December 15, 2011, the Court granted CAT Financial's First Motion for Preliminary Injunction.[4] On the same date, the Court issued the Preliminary Injunction (Dkt. #55) which required New London to surrender the equipment in which CAT Financial had a security interest. See Preliminary Injunction at 2-3.

By the instant Motion, CAT Financial seeks to enjoin Plaintiffs from using or transferring their assets, except as necessary to operate in the normal course of their businesses and to pay amounts owed for taxes or, in the case of the Plaintiffs who are natural persons, to pay bills for basic necessities and amounts owed for taxes. See Motion at 2. Effectively, it is a motion to freeze Plaintiffs' assets. See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 157 (1st Cir. 2004)(finding that plaintiff, which wanted court to preliminarily "enjoin [defendant], its agents, officers, employees and all persons acting in concert with it, 'from spending, dissipating, transferring, selling, or otherwise disposing of, any of [defendant]'s assets or cash up to the value of $15,453,548, other than in the ordinary course of

_____

[4] See n.1.

4

business, without first paying that amount to [plaintiff]]' ... "really wanted ... a freeze order"); In re Adelphia Commc'ns Corp., 293 B.R. 337, 340 (S.D.N.Y. 2003)(describing TRO as "freezing all of the assets of ... [d]efendants, except for those necessary to pay identified operating expenses of companies the ... [d]efendants control, living expenses, and legal fees"); F.T.C. v. Arlington Press, Inc., No. 98CV9260, 1999 WL 33562452, at *13 (C.D. Cal. Jan. 18, 1999)("The FTC's proposed order ... also freezes defendants' assets for all uses except the payment of reasonable, usual and necessary living expenses).

## II. Facts

### A. The First Agreement

On or about March 17, 2008, New London and CAT Financial entered into a Security Agreement and Promissory Note dated March 17, 2008 (the "First Agreement"), for New London's purchase and/or refinance of 22 pieces of equipment (collectively the "First Equipment"), for a total purchase price of $3,393,889.87.[5]

---

[5] The Security Agreement and Promissory Note dated March 17, 2008 (the "First Agreement"), lists 22 pieces of equipment of which 6 pieces are identified as "NEW" and 16 pieces as "USED." Affidavit of Marion Covell (Dkt. #11) ("Covell Aff."), Exhibit ("Ex.") A (First Agreement), Attachment ("Att.") A (Equipment Description Schedule). Plaintiffs appear to contend that the First Agreement involved the purchase of 18 new vehicles and that CAT Financial took a security interest in not only the 18 new vehicles being purchased but also "ten vehicles which Plaintiffs already owned." Plaintiffs' Memorandum of Law Supporting Objection to Caterpillar Financial Services Corporation's Motion for a Writ of Replevin and Preliminary Injunction (Dkt. #15) ("Plaintiffs' Mem. Re First Motion for P.I.") at 4. Plaintiffs do not support their contention with any evidence, and it is at odds with the description of the equipment listed in the First Agreement, see First Agreement, Att.

Affidavit of Marion Covell ("Covell Aff.") (Dkt. #11) ¶ 6. Pursuant to the First Agreement, New London granted CAT Financial a first priority, continuing security interest in the First Equipment as collateral for an installment payment plan. Id. ¶ 7. The First Agreement required New London to remit monthly payments of $64,405.12 to CAT Financial for sixty months and explicitly stated that time was of the essence. Id.

Plaintiffs Universal Truck & Equipment Company, Inc. ("Universal"), Nicholas E. Cambio ("Nicholas"), Vincent A. Cambio ("Vincent"), and Nicholas E. Cambio as Trustee of The Nicholas E. Cambio, Roney A. Malafronte and Vincent A. Cambio Trust (the "Trust") (collectively the "Guarantors") executed personal guaranties (collectively the "First Guaranties") for New London's contractual obligations to CAT Financial under the First Agreement. Id. ¶ 8. On or about March 19, 2008, CAT Financial perfected its security interest in the equipment that was the subject of the First Agreement by filing its U.C.C. Financing Statements.[6] Id. ¶ 9. Of the 22 pieces of equipment that were the subject of the First Agreement, 18 pieces were subsequently refinanced by a second agreement and 4 pieces were returned to CAT Financial. Id. ¶ 10.

_____

A.

[6] CAT Financial notes parenthetically that as to certain of these pieces of equipment it had previously perfected its security interest. Covell Aff. ¶ 9.

**B. The Second Agreement**

On or about July 31, 2009, CAT Financial refinanced the terms of New London's prior purchase of 18 pieces of equipment plus 6 additional pieces of equipment (the "Second Equipment" and, collectively with the First Equipment, the "Equipment") for a total purchase price of $2,490,272.25.  Id. ¶ 11.  As part of the refinancing, the parties executed a Security Agreement and Promissory Note dated July 31, 2009 (the "Second Agreement" and, collectively with the First Agreement, the "Agreements").[7]  Id. Pursuant to the Second Agreement, New London granted CAT Financial a first priority, continuing security interest in the Equipment as collateral for an installment payment plan pursuant to which New London was to remit nine monthly payments of $17,500.00 and fifty-one monthly payments of $55,472.69 to CAT Financial for a total term of sixty months.[8]  Id. ¶ 12.  CAT Financial had previously

_____

[7] Plaintiffs agree that the Second Agreement was secured by 24 pieces of Caterpillar equipment "which was to remain in Plaintiffs' possession."  Plaintiffs' Mem. Re First Motion for P.I. at 5.

[8] Plaintiffs state that there was an additional agreement pursuant to which "Universal [sic] agreed to return four pieces of Caterpillar equipment valued at about $1.2 million to Southworth to be resold in a private sale through Caterpillar's nation-wide and world-wide networks." Id.  According to Plaintiffs, CAT Financial subsequently sold the four pieces in two sales for substantially less than their fair market value and then notified Plaintiffs that they were obligated to pay deficiencies resulting from the sales.  See id. at 5-6.  Plaintiffs indicate that they had expected that the sales of the four pieces of collateral would reduce their monthly obligations on the refinancing note substantially and were surprised to receive deficiency notices.  Id. at 6.  Plaintiffs claim that they could not obtain an accounting of how the proceeds of the sales were applied to their accounts.  Id. at 6-7.  As a result, according to Plaintiffs, they filed the instant lawsuit in June 2010 against

perfected its security interest in each of the 18 units refinanced by the Second Agreement contemporaneously with the original financing transactions with New London. Id. ¶ 12. CAT Financial had previously perfected its security interest in the 6 additional pieces of equipment by filing U.C.C. Financing Statements. Id. The Guarantors executed personal guaranties (the "Second Guaranties" and, collectively with the First Guaranties, the "Guaranties") for New London's contractual obligations to CAT Financial under the Second Agreement. Id. ¶ 13. Like the First Agreement, the Second Agreement stated that time was of the essence. Id. ¶ 12. The Second Agreement also stated that the failure of New London to make any payment when due was an "Event of Default," id. ¶ 17, and that if an Event of Default occurred, CAT Financial could, among other available remedies, enforce the security interest, require that New London assemble the collateral and make it available to CAT Financial at a place designated by CAT Financial, and enter any premises where the collateral was located and take possession thereof, id.

### C.  Subsequent Events

New London stopped making payments on the Second Agreement. Id. ¶ 14. On or about March 2, 2010, CAT Financial sent letters to New London and the Guarantors by certified mail, advising that the

---

Caterpillar, Inc. ("CAT"), CAT Financial, and Southworth to dispute the commercial reasonableness of the sales of collateral and the deficiencies which arose from these sales. Id. at 7.

entire unpaid principal amount was then due and payable along with
all accrued and accruing unpaid interest thereon and demanding the
return of the Equipment.  Id. ¶ 15.  New London and the Guarantors
did not respond to CAT Financial's demands for payment other than
by New London selling, after suit was commenced in this matter and
with CAT Financial's consent, 5 units of equipment and applying the
proceeds of the sales towards New London's indebtedness.  Id. ¶¶
15-16, 20.

As of September 30, 2010, New London was indebted to CAT
Financial for approximately $2,022,284.90, which represents amounts
due and owing for unpaid installment payments as provided by the
Second Agreement and certain interest which continues to accrue
daily, plus costs of collection, including attorney's fees and
expenses.  Id. ¶ 16.

## III.  **Travel**

Plaintiffs Universal, New London, Nicholas, Vincent, and the
Trust (collectively "Plaintiffs") filed their Complaint in the
state court on or about June 18, 2010.  See Notice of Removal (Dkt.
#1).  The action was removed to this Court on November 16, 2010, by
Defendants  CAT,  CAT  Financial,  and  Southworth.    See  Dkt.
Plaintiffs moved to remand the matter, see id., but the motion was
denied at a hearing held on February 3, 2011, see id.  Defendant
Caterpillar Financial Services Corporation's Motion for a Writ of
Replevin and Preliminary Injunction (Dkt. #9) ("First Motion for

Preliminary Injunction") was filed on February 28, 2011. Following a hearing on June 13, 2011, this Magistrate Judge issued a Report and Recommendation (Dkt. #36) ("R & R") which recommended that the First Motion for Preliminary Injunction be granted. The R & R was accepted on December 15, 2011, and the Preliminary Injunction entered the same day.

The instant Second Motion for Preliminary Injunction was filed on October 6, 2011. Plaintiff's opposition was docketed on October 21, 2011. See Plaintiffs' Opposition to Defendant Caterpillar Financial Services Corporation's Second Motion for Preliminary Injunction (Dkt. #44) ("Opposition"). In response to the Opposition, CAT Financial submitted a reply memorandum on November 4, 2011. See Reply of Caterpillar Financial Services Corporation to Plaintiffs' Opposition to Second Motion for Preliminary Injunction (Dkt. #51) ("CAT Financial's Reply"). A hearing on the Motion was scheduled for December 19th but was rescheduled to December 22nd at the request of counsel. See Dkt. Entry for 12/6/11.

On December 21, 2011, CAT Financial filed a motion for leave to file a supplemental affidavit in support of the Motion. See Motion for Leave to File Supplemental Affidavit in Support of Caterpillar Financial Services Corporation's Second Motion for Preliminary Injunction (Dkt. #58) ("Motion for Leave"). The December 22nd hearing on the instant Motion proceeded as scheduled.

<u>See</u> Dkt. However, the Court scheduled a further hearing for January 13, 2012, to consider any objection or response to the Motion for Leave and also to hear further argument on whether the decision in <u>Fairview Machine & Tool Co., Inc. v. Oakbrook International, Inc.</u>, 77 F.Supp.2d 199 (D. Mass. 1999), a case cited in CAT Financial's Reply, supported the granting of the Second Motion for Preliminary Injunction. <u>See</u> Notice and Order (Dkt. #59); <u>see also</u> CAT Financial's Reply at 6.

At the January 13, 2012, hearing Plaintiffs' counsel advised the Court that he had not filed an objection to the Motion for Leave. Accordingly, the Court granted the Motion for Leave. After hearing further argument on the instant Motion, the Court took the matter under advisement.

## IV.  Law

### A.  Freeze Orders

In some situations, federal courts possess general equitable powers to issue prejudgment injunctions in the nature of freeze orders so as to ensure the adequacy of postjudgment remedies. <u>Charlesbank Equity Fund II v. Blinds To Go, Inc.</u>, 370 F.3d 151, 158 (1st Cir. 2004). The Court must conduct a two part analysis in order to determine if such an injunction should be ordered. <u>Westernbank Puerto Rico v. Kachkar</u>, Civil No. 07-1606, 2009 WL 2871160, at *6 (D.P.R. Sept. 1, 2009). First, the court must assess whether the particular case is the type in which such an

order may be issued.  Id.  Second, if so, then the court must evaluate the proper legal standard needed to employ the exercise of its equitable power.  Id.  The First Circuit has noted that the first of these questions is "extremely complex."  Charlesbank Equity Fund II, 370 F.3d at 159.  With reference to the second question, the First Circuit has held that "a prejudgment freeze order is in the nature of an injunction and that, therefore, its propriety should be analyzed under the traditional four-part test."  Id. at 160 (citing Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986)).

### B.  The Four-Part Test

A party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable injury in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) the injunction is in the public interest.  Voice of the Arab World Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)(citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365 (2008)); see also Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).  The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor.  Esso Standard Oil Corp. (Puerto Rico), 445 F.3d at 18; Baldwin v. Bader,

No. 07-46-P-H, 2008 WL 564642, at *1 (D. Me. Feb. 28, 2008). "This burden is a heavy one: 'Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.'" Friends of Magurrewock, Inc. v. U.S. Army Corps of Engineers, 498 F.Supp.2d 365, 369 (D. Me. 2007)(quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)); see also Voice of the Arab World, Inc., 645 F.3d at 32 ("A preliminary injunction is an 'extraordinary and drastic remedy[]' that is never awarded as a matter of right.")(internal citations omitted); Baldwin, 2008 WL 564642, at *1 ("The court must 'bear constantly in mind that an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'")(alteration in original) (quoting Saco Def. Sys. Div. Maremont Corp. v. Weinberger, 606 F.Supp. 446, 450 (D. Me. 1985)).

The *sine qua non* of the four part test is likelihood of success on the merits: if the moving party cannot demonstrate that it is likely to succeed in its quest, the remaining factors become matters of idle curiosity. Esso Standard Oil Corp. (Puerto Rico),45 F.3d at 18 (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)); see also McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001)(stating that movant must show "a substantial likelihood of success on the merits"). The greater the likelihood of success on the merits, the less that is

required in the way of irreparable harm.  <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 19 (1st Cir. 1996).

Nevertheless, the Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." <u>Voice of the Arab World, Inc.</u>, 645 F.3d at 32 (quoting <u>Weinberger v. Romero-Barceló</u>, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982)).  Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.  <u>Id.</u> (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2948.1 (2d ed. 1995) at 139).  Thus, an injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable.  <u>Id.</u> (citing <u>Romero-Barceló</u>, 456 U.S. at 312).

### C.  <u>Grupo</u> and Related Case Law

In <u>Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308, 119 S.Ct. 1961 (1999), the United States Supreme Court held that a federal district court has no authority to issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of plaintiffs' contract claim for money damages.  <u>Id.</u> at 333; <u>see also</u> <u>id.</u> at 321

("we ... follow the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property"); id. at 329 ("federal courts in this country have traditionally applied the principle that courts of equity will not, as a general matter, interfere with the debtor's disposition of his property at the instance of a nonjudgment creditor"); id. at 330 (noting "the historical principle that before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor"). The Grupo opinion discussed two earlier decisions, De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130 (1945), and Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229 (1940). See Grupo, 527 U.S. at 324-27. In De Beers, an anti-trust case, the Court concluded that an injunction restraining the defendants from removing their assets from the United States pending adjudication on the merits was beyond the power of the district court because the injunction dealt with a matter "lying wholly outside the issues in the suit." De Beers, 325 U.S. at 220; see also Grupo, 527 U.S. at 326-27. The Deckert decision, on the other hand, held that a district court had the power to issue an injunction freezing assets to aid in granting the ultimate equitable relief of rescission. Deckert, 311 U.S. at 287-90; see also Grupo, 325 U.S. at 324-25. The Grupo Court found that De Beers supported its conclusion that the

15

district court was without authority to issue the requested
preliminary injunction, see Grupo, 527 U.S. at 327, and
distinguished Deckert as not being on point because "the bill
state[d] a cause [of action] for equitable relief," id. at 325
(alterations in original).

The Fourth Circuit, in a helpful opinion, has distilled the
following principles from the holdings in Grupo, De Beers, and
Deckert:

> First, where a plaintiff creditor has no lien or
> equitable interest in the assets of a defendant debtor,
> the creditor may not interfere with the debtor's use of
> his property before obtaining judgment. A debt claim
> leads only to a money judgment and does not in its own
> right constitute an interest in specific property.
> Accordingly, a debt claim does not, before reduction to
> judgment, authorize prejudgment execution against the
> debtor's assets.
>
> On the other hand, **when the plaintiff creditor asserts a
> cognizable claim to specific assets of the defendant or
> seeks a remedy involving those assets**, a court may in the
> interim invoke equity to preserve the *status quo* pending
> judgment where the legal remedy might prove inadequate
> and the preliminary relief furthers the court's ability
> to grant the final relief requested. This nexus between
> the assets sought to be frozen through an interim order
> and the ultimate relief requested in the lawsuit is
> essential to the authority of a district court in equity
> to enter a preliminary injunction freezing assets.

United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d
489, 496 (4th Cir. 1999)(bold added);[9] accord Fairview Machine, 77

---

[9] The Rahman court also stated "that when interim equitable relief
is authorized *and the public interest is involved*, the doctrine applies
that '[c]ourts of equity may, and frequently do, go much farther both to
give and withhold relief in furtherance of the public interest than they
are accustomed to go when only private interests are involved.'" United

F.Supp.2d at 204 (quoting Rahman).

## V.   Application of Law to Facts

### A.   May a Freeze Order Be Issued in this Type of Case?

#### 1.   Universal, Nicholas, Vincent, and the Trust

Applying the principles identified in Rahman to the instant matter, CAT Financial does not have a lien or security interest in the assets of Universal, Nicholas, Vincent, or the Trust.  Thus, there is no "nexus between the assets sought to be frozen ... and the ultimate relief requested in the lawsuit ...."  Rahman, 198 F.3d at 496-97; cf. De Beers, 325 U.S. at 220 ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").  Accordingly, as to these four Defendants, CAT Financial may not interfere with their use of their property before obtaining a money judgment, see Rahman, 198 F.3d at 496, and a freeze order may not be issued against them.

Moreover, it bears noting that CAT Financial's equitable claim for unjust enrichment, on which CAT Financial relies for the issuance of the freeze order, see CAT Financial's Reply at 6 n.6, is pled only against New London, see n.3 supra; see also Answer and Counterclaim ¶¶ 47-48 (alleging that a benefit has been conferred

_____

States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 489, 497 (4ᵗʰ Cir. 1999)(alteration in original)(quoting United States v. First Nat'l City Bank, 379 U.S. 378, 383, 85 S.Ct. 528 (1965)).

on New London and that it would be an unjust enrichment for New London to retain the benefit conferred). This Magistrate Judge has grave doubts that the principles identified by the Rahman court can be stretched to allow the assets of a defendant, against whom no equitable cause of action has been pled, to be frozen.

Accordingly, the Motion should be denied as to Universal, Nicholas, Vincent, and the Trust. I so recommend.

### 2. New London

With respect to New London, CAT Financial has a security interest in the Equipment, see Section II (Facts) supra at 6, but the Equipment has already been returned to CAT Financial.[10] This raises the question of whether the Motion may be granted with respect to other assets of New London in which CAT Financial does not have a lien or equitable interest.

In Fairview Machine, a case on which CAT Financial relies, see CAT Financial's Reply at 6, the plaintiff alleged that it had provided machinery and services for the defendant's benefit for which plaintiff had not received full payment and that the defendant had then sold the machinery to a third party. Fairview Machine, 77 F.Supp.2d at 205. The plaintiff's complaint included a count for *quantum meruit*, see id. at 204, and the court attached importance to this fact in finding that a preliminary injunction

---

[10] See n.1.

freezing assets would be "a reasonable measure for preserving the status quo in aid of the ultimate equitable relief claimed," id. at 206. In reaching this conclusion, the court explained its reasoning:

> The plaintiff seeks to recover, from specific assets of the defendant, the full agreed price of the machinery it provided. The plaintiff has an *equitable* interest in defendant's assets, since it seeks restitution for unjust enrichment. Thus, the plaintiff's claim for *quantum meruit* seeks cognizable relief in equity involving the specific assets of the defendant: *i.e.*, funds in the possession of the defendant to pay for the machinery it previously accepted.

Fairview Machine, 77 F.Supp.2d at 205.

CAT Financial describes Fairview Machine as "instructive," CAT Financial's Reply at 6, and notes that it, like the Fairview Machine plaintiff, has asserted a claim for unjust enrichment, see id. at 6 n.4 (citing Count IV of CAT Financial's counterclaim). Therefore, according to CAT Financial, because it has an equitable interest in assets, "an injunction is a 'reasonable measure to secure those assets in aid of the equitable relief claimed.'" Id. at 6 (quoting Fairview Machine, 77 F.Supp.2d at 205).

Fairview Machine, however, is distinguishable from the instant case. Here the Equipment in which CAT Financial claims a lien or security interest has been returned to it. In contrast, in Fairview Machine the machinery for which the plaintiff was owed a balance had allegedly been sold to a third party. Fairview

19

Machine, 77 F.Supp.2d at 205.  Indeed, it was the news of the pending sale that had prompted the plaintiff to move for a preliminary injunction to prevent the defendant from selling its assets other than in the ordinary course of business or to require the defendant to place $630,000 in escrow to cover the remaining balance on the machinery.  Id. at 201.  These facts provided the context for the court's finding that "the plaintiff's claim for *quantum meruit* seeks cognizable relief in equity involving the specific assets of the defendant: *i.e.,* funds in the possession of the defendant to pay for the machinery it previously accepted." Id. at 205.

CAT Financial appears to contend that because it has included a claim for unjust enrichment in its counterclaim, this gives CAT Financial an equitable interest in all of New London's assets and opens the door to the issuance of a preliminary injunction effectively freezing all of New London's assets.  See CAT Financial's Reply at 6 (citing and quoting Fairview Machine for the proposition "that where there is an equitable interest in assets, an injunction is a 'reasonable measure to secure those assets in aid of the equitable relief claimed.' Id. at 205.").  This Court is not entirely convinced that such an expansive reading of the Supreme Court's decisions in Grupo, De Beers, and Deckert is correct.

In <u>Johnson v. Couturier</u>, 572 F.3d 1067 (9th Cir. 2009), the president of a closely held corporation and his fellow directors were sued by the participants of an employee stock ownership plan who claimed that the president was vastly overcompensated and that the directors had breached their fiduciary duties in their capacities as ERISA[11] fiduciaries and corporate directors. <u>Id.</u> at 1072-75. The plaintiffs obtained a preliminary injunction which prevented the president from transferring, secreting, or mortgaging the assets which he had received as part of a buyout package without prior court approval. <u>Id.</u> at 1075. In finding that the district court had correctly balanced the relative hardships, the Ninth Circuit noted that "the freeze on [the president]'s assets *is limited to those in which [p]laintiffs have an equitable interest* and does not extend to normal living expenses and legal fees ...." <u>Id.</u> at 1086 (italics added).

In a similar vein, other courts have emphasized that "a plaintiff seeking an asset freeze injunction must have asserted an underlying equitable interest in the particular property that is the subject of the proposed injunction." <u>In re Qwest Commc'ns Int'l Sec. Litig.</u>, 243 F.Supp.2d 1179, 1184 (D. Colo. 2003)(citing <u>Rahman</u>, 198 F.3d at 492). "In other words, a plaintiff seeking an asset freeze injunction must assert an equitable claim, and that

---

[11] Employee Retirement Income Security Act of 1974 ("ERISA"). <u>See</u> <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1072 (9th Cir. 2009).

claim must have a clear and close nexus to the assets sought to be enjoined." Id.; see also Trustees of Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. Winchester Land, L.L.C., 722 F.Supp.2d 826, 828 (E.D. Mich. 2010)(noting that "[t]here are limited exceptions to the Grupo Mexicano prohibition on asset-freeze injunctions issued to protect an anticipated judgment, such as where a plaintiff's complaint asserts an equitable claim to an asset with a 'clear and close nexus to the assets to be enjoined'") (quoting In re Qwest Commc'ns Int'l Sec. Litig., 243 F.Supp.2d at 1184); cf. Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 33-34 (1st Cir. 2010)(finding an injunction proper where the creditors asserted a claim for an equitable remedy and the funds enjoined may have belonged to the judgment debtor).

After consideration, this Court concludes CAT Financial's equitable claim for unjust enrichment does not have the required "clear and close nexus to the assets sought to be enjoined." In re Qwest Commc'ns Int'l Sec. Litig., 243 F.Supp.2d at 1184. The requested injunction seeks to freeze all of New London's assets. However, the assets in which CAT Financial has a security interest (and on which it bases its claim for unjust enrichment) have already been returned to CAT Financial by virtue of the granting of the Preliminary Injunction. Moreover, granting the instant Motion arguably would not preserve the status quo but alter it as CAT Financial would have effectively frozen New London's assets.

### 3. Conclusion Re Type of Case

As is evident from the above findings, the Court concludes that this is not the type of case in which a freeze order may be issued. Thus, the Motion fails to survive the first of the two-part analysis stated in <u>Westernbank Puerto Rico</u>, 2009 WL 2871160, at *6. Accordingly, the Motion should also be denied as to New London. I so recommend.

### B. Could CAT Financial Satisfy the Four-Part Test?

Even if, contrary to the above determination, this is the type of case in which an asset freeze order may be issued, CAT Financial cannot meet its burden under the traditional four-part test. As previously stated, the *sine qua non* of the four-part test is the likelihood of success on the merits, and CAT Financial cannot succeed on its claim for unjust enrichment because there is an express contract between CAT Financial and New London regarding the Equipment. See <u>In re Citigroup, Inc.</u>, 535 F.3d 45, 62 (1st Cir. 2008)("The law of unjust enrichment applies ... only when there is no express contract between the parties.")(alteration in original) (quoting Georgia Court of Appeals); <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 130 (1st Cir. 2006)("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."); <u>Horizon Props., LLC v. Indian Corner Homes, LLC</u>, No. W.C. 00-351, 2004 WL 254582, at *4 n.3 (R.I. Super. Ct. Jan. 27, 2004)(noting that "[r]ecovery for unjust enrichment may not be

available where there is an express contract")(citing <u>Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.2d 1396, 1413 (11th Cir. 1998)); <u>see also</u> <u>Kartman v. State Farm Mut. Auto. Ins. Co.</u>, 634 F.3d 883, 891 (7th Cir. 2011)("In Indiana, as elsewhere, the existence of an express contract precludes recovery under the theory of unjust enrichment.")(internal quotation marks omitted); <u>Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of Philadelphia</u>, 625 F.3d 148, 153 n.1 (3rd Cir. 2010)("a party cannot assert a claim of unjust enrichment if there is an express contract on the same subject")(internal quotation marks omitted)(applying New Jersey law); <u>Casa Orlando Apts., Ltd. v. Fed. Nat'l Mortg. Ass'n</u>, 624 F.3d 185, 196 n.32 (5th Cir. 2010)("some states, including Texas, preclude unjust enrichment claims when a valid, express contract governing the subject matter exists"); <u>Wuliger v. Mfrs. Life Ins. Co.</u>, 567 F.3d 787, 799 (6th Cir. 2009)("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject."); <u>Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.</u>, 407 F.3d 1091, 1117 n.22 (10th Cir. 2005)("[n]ormally when an express contract exists between the parties, unjust enrichment is not available as a means of recovery")(alteration in original)(noting Arkansas law as stated in <u>Klein v. Arkoma Prod. Co.</u>, 73 F.3d 779, 786 (8th Cir. 1996)); <u>Fabri v. United Techs. Int'l, Inc.</u>, 387 F.3d 109, 128 (2nd Cir. 2004)(affirming dismissal of unjust enrichment

claim involving sale of helicopter where express contract governed parties' relationship); <u>Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.</u>, 357 F.3d 62, 69 (D.C. Cir. 2004)("there can be no claim for unjust enrichment when an express contract exists between the parties"); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1091 (9th Cir. 2003)("A party cannot seek recovery under an unjust enrichment theory if a contract is the measure of [the] plaintiff's right.")(alteration in original)(quoting <u>ID Biomedical Corp. v. TM Techs., Inc.</u>, Civ. A. No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995)); <u>Crossville, Inc. v. Kemper Design Ctr., Inc.</u>, 758 F.Supp.2d 517, 533 (M.D. Tenn. 2010)("It is true that recovery under unjust enrichment is not available when the parties have a valid contract on the matter at issue.")(internal quotation marks omitted) (applying Tennessee law).[12] Thus, CAT Financial cannot satisfy the

---

[12] The Rhode Island Supreme Court has not explicitly held that the existence of an express contract precludes recovery under the theory of unjust enrichment. However, this Court makes an "informed prophecy," <u>Andrew Robinson Int'l., Inc. v. Hartford Fire Ins. Co.</u>, 547 F.3d 48, 51 (1st Cir. 2008), as to that court's likely stance, <u>id.</u>; <u>see also</u> <u>Kunelius v. Town of Stow</u>, 588 F.3d 1, 9 (1st Cir. 2009)("Where no authoritative decision from the state court of last resort resolves an issue of state substantive law, we must predict, as best we can, that court's resolution of the issue ...."); <u>R.W. Int'l Corp. v. Welch Foods, Inc.</u>, 88 F.3d 49, 52 (1st Cir. 1996)("Absent controlling state court precedent, a federal court sitting in diversity may ... predict[] ... the course the state courts would take [if] reasonably clear.")(alterations in original). This Court predicts that the Rhode Island Supreme Court would hold that an express contract precludes recovery under a theory of unjust enrichment based on its decision in <u>Fondedile, S.A. v. C.E. Maguire, Inc.</u>, 610 A.2d 87 (R.I. 1992), and the precedents from other jurisdictions already cited.

four-part test because it cannot show likelihood of success on the merits on its claim for unjust enrichment.

## VI.  Conclusion

For the reasons stated above, I recommend that CAT Financial's Second Motion for Preliminary Injunction be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); District of Rhode Island Local Rule Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986);

---

In Fondedile, a case involving an express contract, the court found that the trial justice did not err in denying plaintiff recovery under a theory of quasi-contract (unjust enrichment). Id. at 97-98.  The court in reaching this conclusion appeared to attach importance to the fact that there was a written contract between the parties.

As a general rule contracts among equals are not subject to postexecution judicial scrutiny for fairness or reallocation of risks and rewards.  ...  The bid and the contract documents clearly transfer the risk of unexpected soil conditions to [plaintiff].  The contract clearly makes payment based on linear foot of root pile installed and provides no allowance for grout payments based on cubic yard of grout consumed.  The plaintiff requests the court to alter the terms of this understanding.  It would be unjust after execution of the contract and completion of the work to deprive the city of the benefit for which it bargained.  If the city was enriched because it made a good deal for itself, the enrichment is not unjust.  Although the plaintiff may have negotiated a bad contract, the surrounding circumstances do not satisfy the prerequisites for recovery in quasi-contract.

Id. at 97-98.

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


**/s/ David L. Martin**
DAVID L. MARTIN
United States Magistrate Judge
April 27, 2012