UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| _____ | ) | |
| UNIVERSAL TRUCK & EQUIPMENT | ) | |
| COMPANY, INC., NEW LONDON MINING, | ) | |
| MANUFACTURING & PROCESSING, LLC, | ) | |
| NICHOLAS E. CAMBIO, VINCENT A. | ) | |
| CAMBIO, and NICHOLAS E. CAMBIO, | ) | |
| as Trustee of THE NICHOLAS E. | ) | |
| CAMBIO, RODNEY A. MALAFRONTE AND | ) | |
| VINCENT A. CAMBIO TRUST, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-466 S |
| | ) | |
| CATERPILLAR, INC., et al., | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CATERPILLAR FINANCIAL SERVICES | ) | |
| CORPORATION and | ) | |
| SOUTHWORTH-MILTON, INC., | ) | |
| Defendants and | ) | |
| Plaintiffs-in- | ) | |
| Counterclaim. | ) | |
| _____ | ) | |

**ORDER**

WILLIAM E. SMITH, U.S. District Judge.

Caterpillar, Inc. ("Caterpillar") and Caterpillar Financial Services Corporation ("Cat Financial" and, collectively, "Defendants") have filed a motion for summary judgment on all of the claims asserted by Universal Truck & Equipment Company, Inc. ("Universal"), New London Mining, Manufacturing & Processing, LLC ("New London"), Nicholas E. Cambio ("Nick Cambio"), individually and as Trustee of the Nicholas E. Cambio, Rodney A.

Malafronte, and Vincent A. Cambio Trust ("Trust"), and Vincent A. Cambio ("Vincent Cambio" and, collectively, "Plaintiffs") and Defendants' counterclaims. For the reasons that follow, Defendants' motion for summary judgment is granted.

I.   Background

    A.   The First Agreement

    On or about March 17, 2008, New London entered into a Security Agreement and Promissory Note ("First Agreement") to purchase and/or refinance twenty-two pieces of equipment ("First Equipment") from Cat Financial for a total purchase price of $3,393,889.87. (Caterpillar Inc.'s and Caterpillar Fin. Servs. Corp.'s Mot. for Leave to File Corrected Statement of Facts and Aff. of A. Neil Hartzell ¶ 1, ECF No. 77-1 ("Defs.' SOF").) New London agreed to pay Cat Financial approximately $64,405.17 per month for sixty months. (Id. ¶ 4.) Also, Cat Financial was granted a first priority, continuing security interest in the First Equipment as collateral ("Pledged Collateral"). (Id. ¶ 3.) Personal guarantees ("First Guarantees") were executed by Universal, Nick Cambio, Vincent Cambio, and Nick Cambio as Trustee of the Trust (collectively, the "Guarantors"). (Id. ¶ 5.)

    B.   The Second Agreement

    In mid-2009, New London and Cat Financial entered into discussions to explore ways to refinance the First Agreement.

2

(Id. ¶ 10.)  Cat Financial proposed selling the First Equipment at quick-rate sales of sixty percent distressed value.  (Id. ¶ 12.)  As part of these sales, New London would be charged approximately $40,000 for shipping and would remain liable for any resulting deficiency.  (Id.)

On or about July 29, 2009, the parties agreed that, prior to the execution of a refinancing, New London would immediately surrender four pieces of equipment to be sold or redeemed as a way to reduce the remaining deficiency.[1]  (Defs.' SOF ¶ 14.)  The four units were to be stored on dealer Southworth-Milton, Inc.'s ("Southworth") lot for seventy-five days, during which New London could try and sell the equipment itself.  (Id.)  After seventy-five days, the four pieces would be sold through Cat Financial's normal remarketing process.  (Id.)  New London would remain liable for any deficiency resulting from the sales. (Id.)

Cat Financial confirmed these terms in an e-mail to Melissa Faria, a representative of New London.  (Id.)  Defendants aver that, at no time during the negotiations was New London told by anyone on behalf of Cat Financial that Cat Financial guaranteed a price for any of the four pieces sold or that there would be no deficiency owed following the sales.  (Id. ¶ 15.)

---

[1] The four units turned over by New London were two 735 Articulated Trucks, a 988G Front Loader, and a D6TXL Tractor.

Plaintiffs dispute the events surrounding the sale of the four units. They contend that, in addition to the Second Agreement, there was an oral agreement between Caterpillar, Cat Financial, Southworth, and New London stipulating that New London would turn over four pieces of equipment to reduce the deficiency on the First Agreement. (Pls.' Statement of Disputed Facts ¶ 14, ECF No. 88-1 ("Pls.' SODF").) They further contend that the four pieces were valued at approximately $1,000,000, and the outstanding balance of the First Agreement would be reduced by that amount regardless of how much Cat Financial actually received when it sold them.

On or about July 31, 2009, Cat Financial and New London refinanced the terms of New London's prior purchase of eighteen pieces of equipment, plus six additional pieces ("Second Equipment" and, collectively with the First Equipment, the "Equipment") for a total price of $2,490,272.25. (Defs.' SOF ¶ 22.) As part of the refinancing, the parties executed another Security Agreement and Promissory Note dated July 31, 2009 ("Second Agreement"), stipulating that New London was to pay Cat Financial $17,500 per month for nine months and $55,472.69 per month for the following fifty-one months. (Id. ¶¶ 23-24.)

C.   Subsequent Events

On or about August 9, 2009, the four pieces of equipment were moved to Southworth's lot in Milford, Massachusetts.

Thereafter, on October 14, 2009, Joseph Kohler of Cat Financial sent an e-mail to Ms. Faria informing her that, at the end of the seventy-five-day period, the equipment was likely going to be made ready for sale at Cat Financial's Regional Sales Center in North Carolina.  (Id. ¶ 29.)  Three of the units were also listed on Cat Financial's sales site, CatUsed.com, to generate a world-wide audience of potential buyers.  (Id. ¶ 34.)  Two of the four pieces were sold at an auction in North Carolina, the 988G Front Loader was sold to a private buyer, and the final piece was sold to Southworth while it was held in Southworth's lot.  (Id.)  The four pieces sold at prices comparable to that of other used equipment at the time, as well as the values assigned by the Green Book.[2]  (Id. ¶ 36.)

New London last made a payment under the Second Agreement in April 2010.  (Id. ¶ 38.)  Cat Financial sent letters to New London and the Guarantors notifying them that New London was in default and, pursuant to the Second Agreement, the entire unpaid principal amount was then due and payable along with all accrued and accruing unpaid interest thereon.  (Id. ¶ 40.)  However, New London has not responded to Cat Financial's demands for payment other than by selling, after this suit commenced and with Cat

---

[2] The Green Book contains price ranges for used construction equipment.

Financial's consent, five other pieces of equipment. (Id. ¶ 41.)

As of September 30, 2010, New London was indebted to Cat Financial for approximately $2,500,000 in unpaid payments, as well as interest, which accrues daily, cost of collection, and attorney's fees. (Id. ¶ 42.)

On June 18, 2010, Plaintiffs filed suit in Rhode Island Superior Court for Kent County alleging breach of contract and fraud, and requesting a declaratory judgment and injunctive relief related to Defendants' purported breach of contract and fraudulent misrepresentations. Defendants counterclaimed, alleging breach of contract and unjust enrichment, and also requested a permanent injunction for a writ of replevin. On November 16, 2010, Defendants removed the case to this Court. Defendants now move for summary judgment on all of Plaintiffs' claims and Defendants' counterclaims.

II. Legal Standard

Summary judgment is appropriate when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; see also Drumm v. CVS Pharmacy, Inc., 701 F. Supp. 2d 200, 206 (D.R.I. 2010). "A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." <u>Drumm</u>, 701 F. Supp. 2d at 206
(quoting <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 24 (1st
Cir. 2009)).

III. Discussion

    A.   Plaintiffs' Claims against Caterpillar

Viewing the facts in the light most favorable to
Plaintiffs, no reasonable jury could find that Caterpillar was a
party to any of the negotiations with New London and Cat
Financial.   Simply put, there is no mention of Caterpillar
whatsoever in any of the documents relating to the loan
agreements.   Plaintiffs' alternative argument, that Caterpillar
and Cat Financial should be viewed as a single corporate entity,
and, thus, Caterpillar should be held liable, fails as well.
(<u>See</u> Pls.' Obj. to Defs.' Caterpillar, Inc.'s and Caterpillar
Fin. Servs. Corp.'s Mot. for Summ. J. 4, ECF No. 88-1 ("Pls.'
Obj.").)   The only evidence to support this argument is the
deposition testimony of a New London employee stating that she
always assumed she was communicating with Caterpillar during her
talks with Cat Financial.   (<u>See</u> Dep. of Melissa A. Faria, Ex. I
101:6-102:18, ECF No. 77-2.)   However, an unfounded assumption
does not justify disregarding Caterpillar and Cat Financial's
respective corporate forms.   See <u>Scully Signal Co. v. Joyal</u>, 881
F. Supp. 727, 737 (D.R.I. 1995) ("[T]he corporate entity should
be disregarded . . . only when the facts of a particular case

render it unjust and inequitable to consider the subject corporation a separate entity." (quoting R&B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1354 (R.I. 1984))). Based on the lack of evidence demonstrating Caterpillar's involvement, Plaintiffs' claims against Caterpillar must fail.

B.   Plaintiffs' Claims against Cat Financial

1.   Breach of Contract

Under Rhode Island law, to establish a claim for breach of contract, a plaintiff must demonstrate that:  (1) an agreement existed between the parties; (2) the defendant breached the agreement; (3) the breach caused damages to the non-breaching party.  Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (citing Petrarca v. Fid. & Cas. Ins. Co, 884 A.2d 406, 410 (R.I. 2005)).

The allegations underlying the breach of contract claims against Cat Financial stem from the four pieces of equipment sold to reduce the deficiency on the First Agreement. Plaintiffs contend that an oral agreement was reached where New London would turn over four pieces of the Pledged Collateral, valued at roughly $1,000,000, to Cat Financial.  (See Pls.' Obj. 8.)  According to Plaintiffs, this transfer was to be credited to the balance remaining on the First Agreement, and

the remaining debt would be refinanced.[3]   Furthermore, so the story goes, the full-market value of the four pieces of equipment was to be applied to the First Agreement, regardless of their actual sale price.

The only evidence submitted by Plaintiffs to support this claim is the Affidavit of Nick Cambio.  (Aff. of Nick Cambio ¶ 3, ECF No. 88-1.)  However, this affidavit does no more than repeat the conclusory allegations made in the Complaint.[4]   To create a genuine issue of material fact, the affidavit must demonstrate personal knowledge of specific facts supporting the existence of an oral agreement with the alleged provisions.  See Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) ("Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant."); see also

---

[3] According to Plaintiffs, turning over the four pieces of equipment to Cat Financial reduced the balance of the First Agreement to approximately $2,400,000, which is the amount the parties sought to refinance.

[4] Perhaps if the affidavit provided more concrete facts, the question would need to go to the jury.  Not only does the affidavit fall far short, but Melissa Faria's detailed notes of the negotiations between Cat Financial and New London discredit Nick Cambio's version of the events.  (Ex. K, ECF No. 77-2.) Nowhere in Ms. Faria's notes is there any discussion of a promise to sell the equipment at a private sale, and Cat Financial explicitly mentioned that New London would remain liable for any deficiency resulting from the sales.

Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (stating that affidavits simply reiterating allegations in the complaint that do not provide specific factual information made on the basis of personal knowledge are not enough to defeat an opposing party's motion for summary judgment); Fed. R. Civ. P. 56(e). Therefore, no reasonable jury could find the existence of an oral agreement based on the bald assertions found in the affidavit.

Plaintiffs' second argument, that the four pieces of equipment were sold in a commercially unreasonable manner, is also without merit. (See Pls.' Obj. 7.) A disposition of collateral is made in a commercially reasonable manner if it is made "(1) In the usual manner on any recognized market; (2) At the price current in any recognized market at the time of the disposition; or (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." R.I. Gen. Laws. § 6A-9-627(b). The price at which the collateral is sold is not dispositive; rather, an analysis of the secured party's practices leading up to the sale determines commercial reasonableness. Suffield Bank v. LaRoche, 752 F. Supp. 54, 61 (D.R.I. 1990).

After the seventy-five-day waiting period, Cat Financial moved two of the pieces of equipment to its Regional Sales

Center in North Carolina and advertised three of them on its website, CatUsed.com. As one of the leading sellers of construction equipment, Cat Financial's website generates a world-wide audience of potential buyers.[5] Considering Cat Financial's extensive resources, as well as Plaintiffs' failure to submit any evidence demonstrating otherwise, a reasonable jury could not find that this was a commercially unreasonable manner in which to market the four units.

Plaintiffs' allegation that Cat Financial is in breach of the implied covenant of good faith and fair dealing is also unsupported by any evidence. (See Pls.' Obj. 5-6.) "The purpose of the covenant of good faith and fair dealing is to protect the parties' objectives and reasons for entering into a contract." Hord Corp. v. Polymer Research Corp. of Am., 275 F. Supp. 2d 229, 238 (D.R.I. 2003). In determining whether a party has breached the covenant, the Court must decide "whether or not the actions in question are free from arbitrary or unreasonable conduct." Havlik v. Johnson & Wales Univ., 490 F. Supp. 2d 250, 261 (D.R.I. 2007) (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d 317, 329 (D.R.I. 1999)). Again, Plaintiffs have failed to submit any evidence that could lead a jury to conclude that Cat Financial's conduct was arbitrary or

---

[5] Indeed, Cat Financial procured a higher bid than New London for one of the units.

unreasonable.   See id.; see also Hord, 275 F. Supp. 2d at 238
(finding that the plaintiff acted within the confines of the
parties' contractual objectives, and thus, by definition, in
good faith).   It follows that all of Plaintiffs' breach of
contract claims fail as a matter of law.

      2.   Fraud/misrepresentation

     Plaintiffs claim that, had New London not relied on the
misrepresentations made by Cat Financial, it would not have
turned over the four pieces of equipment. (See Pls.' Obj. 8.)
This argument fails because Plaintiffs have not presented any
facts establishing Cat Financial's intent to deceive.   See Nat'l
Credit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 70 (D.R.I.
1992).   Moreover, Plaintiffs' vague, conclusory allegations do
not meet the heightened pleading requirement for fraud under
Rule 9(b) of the Federal Rules of Civil Procedure.   See Fed. R.
Civ. P. 9(b); N. Am. Catholic Educ. Programming Found., Inc. v.
Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule 9(b) requires
not only specifying the false statements and by whom they were
made but also identifying the basis for inferring scienter.").
Accordingly, Plaintiffs' fraud claim fails as a matter of law.
See Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 4-14 (1st Cir.
2007) ("A district court may enter summary judgment dismissing a
complaint alleging fraud if the complaint fails to satisfy the
requirements of Rule 9(b)." (citing Murr Plumbing, Inc. v.

<u>Scherer Bros. Fin. Servs. Co.</u>, 48 F.3d 1066, 1070 (8th Cir. 1995))).

> 3.   Declaratory Judgment

Plaintiffs' request for a declaratory judgment stating that the balance remaining on the First Agreement is paid in full and/or null and void and to award Plaintiffs' costs is based on harm caused by Cat Financial's alleged breaches of contract and fraudulent misrepresentations.   (Compl. ¶ 93, ECF No. 1-1.) However, since both of the underlying substantive claims fail, it follows that there is no basis for this claim as well.   <u>See W. Reserve Life Assur. Co. of Ohio v. Conreal LLC</u>, 715 F. Supp. 2d 270, 276 (D.R.I. 2010) (finding that declaratory judgment claim must be dismissed because the underlying arguments fail).

> 4.   Injunctive Relief

Under Rhode Island law, in order to obtain a permanent injunction "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006); <u>Animal Welfare Inst. v. Martin</u>, 623 F.3d 19, 26 (1st Cir. 2010).

Plaintiffs brought three counts for injunctive relief in their Complaint.   (Compl. ¶¶ 100-05.)   Counts VI and VIII concern Cat Financial's repossession of the Pledged Collateral after the default and Count VII seeks to enjoin Cat Financial from proceeding on the guarantees.   All three counts have no basis because Plaintiffs have admitted they are in default of both agreements.   (Ex. A to Defs.' SOF, Pls. Answer to Caterpillar Fin. Servs. Corp.'s First Req. for Admis. Req. Nos. 14 & 38, ECF No. 77-2.)   Pursuant to both agreements, Cat Financial has the right to demand payment of the deficiencies remaining in the event of default, as well as to repossess the Pledged Collateral.   (Exs. A & C to Aff. of Marion Covell ("Covell Aff."), ECF No. 11-1 and ECF No. 11-3.)   Moreover, the fact that Cat Financial is not in breach and did not sell the four pieces of equipment in a commercially unreasonable manner demonstrates that Plaintiffs will not suffer irreparable injury if Cat Financial collects the deficiency.   See eBay, 547 U.S. at 391.   It follows that Plaintiffs' injunctive relief claims fail as a matter of law.

C.   Defendants' Counterclaims

1.   Breach of Contract

Defendants have submitted evidence establishing the existence of a binding agreement between Cat Financial and New London.   (Exs. A, C & E to Covell Aff., ECF Nos. 11-1, 11-3 and

11-5.)  As mentioned above, Plaintiffs have already admitted to being in breach of both agreements, and Defendants have also submitted testimony indicating that, as of September 30, 2010, New London is indebted to Cat Financial for approximately $2,500,000.  (Covell Aff. ¶ 16.)

Plaintiffs argue that summary judgment cannot be granted because the deficiency owed by New London cannot be determined until the amount owed to New London resulting from the commercially unreasonable sale of the four pieces of equipment is valued and then credited to the deficiency.  (Pls.' Obj. 8.) However, the equipment was sold in a commercially reasonable manner, leaving New London liable for the total remaining deficiency.  Accordingly, Defendants are entitled to judgment on their claim for breach of contract.  See <u>Barkan</u>, 627 F.3d at 39.[6]

### 2.   Permanent Injunction or Writ of Replevin

Replevin is available in federal court under Rule 64 of the Federal Rules of Civil Procedure under the law of the state where the court is located.[7]  Fed. R. Civ. P. 64(a).  Under Rhode Island law, "[w]henever any goods or chattels of more than five

---

[6] Defendants assert a claim for unjust enrichment in the alternative to their breach of contract claim.  Because the Court finds for Defendants on the breach of contract claim, it does not reach Defendants' unjust enrichment claim.

[7] Defendants dispute whether this issue is substantive or procedural in nature.  (<u>See</u> Report and Recommendation 8-11, ECF No. 36.)  However, the Court does not need to address this issue because Defendants prevail regardless.  (<u>See</u> <u>id.</u>)

thousand dollars ($5,000) value shall be unlawfully taken or unlawfully detained from the owner or from the person entitled to the possession thereof . . . the owner or other person may cause the same to be replevied by writ of replevin." R.I. Gen. Laws § 34-21-1.

This Court's previous grant of a writ of replevin establishes Cat Financial's right to present possession of the collateral. (See Prelim. Inj. ¶ 1, ECF No. 55); see also Brunswick Corp. v. Sposato, 389 A.2d 1251, 1253 (R.I. 1978) (finding that party seeking writ of replevin must prove the right of present possession arising out of general or special ownership to succeed). Furthermore, due to the fact that Cat Financial is still owed approximately $2,500,000, it appears likely that it will need to sell the pieces of equipment that it has repossessed in order to lower the deficiency. See eBay, 547 U.S. at 391. With respect to the balance of the equities, Cat Financial's need to sell the equipment outweighs any harm New London may suffer. See id. Finally, the public has an interest in requiring parties to honor their contractual agreements, and therefore, a permanent injunction in Defendants' favor is appropriate. See id.

IV.   Conclusion

For these reasons, Defendants' motion for summary judgment dismissing Plaintiffs' claims and in favor of Defendants' counterclaims is GRANTED.

It is so ordered.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  November 5, 2012